UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BENSHOT, LLC,

       Plaintiff,

v.                                                                              Case No. 18-C-1716

LUCKY SHOT USA LLC and
2 MONKEY TRADING LLC,

       Defendants.

## DECISION AND ORDER

Plaintiff BenShot, LLC (BenShot) filed this action against Defendants Lucky Shot USA LLC (Lucky Shot USA) and 2 Monkey Trading LLC (2 Monkey), alleging that the defendants violated Section 43(a) of the Lanham Act , 15 U.S.C. § 1125(a), and unfair competition common law. The court has jurisdiction under 28 U.S.C. §§ 1331 and 1367(a). Presently before the court is the defendants' motion to dismiss BenShot's complaint for failure to state a claim upon which relief can be granted. For the reasons stated below, the defendants' motion will be denied.

## LEGAL STANDARD

"A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014); Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When reviewing a Rule 12(b)(6) motion to dismiss, the court must accept all well-pleaded facts in the complaint as true and view them in a light most favorable to the plaintiff. *Doe v. Vill. of Arlington Heights*, 782 F.3d 911, 914–15 (7th Cir. 2015). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

## ALLEGATIONS OF THE COMPLAINT

BenShot is a Wisconsin Limited Liability Company that has manufactured, promoted, sold, and distributed unique drinking glasses since 2015. BenShot sells its products throughout the United States. Lucky Shot USA is a Florida Limited Liability Company that promotes, sells, and distributes products made from used ammunition and artillery shells, and operates and does business on Amazon.com, LuckyShotUSA.com, and MilitaryBalls.com. Lucky Shot USA sells its products in interstate commerce. 2 Monkey is a Florida Limited Liability Company and the parent company of Lucky Shot USA. 2 Monkey acts in concert with Lucky Shot USA to sell Lucky Shot-branded products in interstate commerce.

In 2015, BenShot began selling drinking glasses with bullets embedded in the side via an insertion in the glass. BenShot initially sold shot and tumbler glasses, and then later added pint and wine glasses. Around October 2016, Lucky Shot USA began advertising and selling a shot glass with a bullet embedded in the side on Amazon.com and LuckyShotUSA.com. Around March 2017, Lucky Shot USA added an embedded whiskey glass. Around August 2017, Lucky Shot USA began

selling embedded pint and wine glasses. Since 2017, Lucky Shot USA has operated MilitaryBalls.com to advertise and sell its products.

On Amazon.com, 2 Monkey is listed as the manufacturer of Lucky Shot's USA glasses. The retail packaging of Lucky Shot USA's shot, whiskey, and wine glasses states: "Distributed by 2 Monkey Trading, LLC. Packaging and product design © 2 Monkey Trading, LLC." ECF No. 1 at ¶ 16. 2 Monkey owns the federal trademark registration to the mark "Lucky Shot." Lucky Shot USA's logo contains the terms "U.S.A." and "HANDCRAFTED." *Id.* at ¶ 18. Lucky Shot USA's logo appears on the top and sides of the product packaging for its embedded shot, whiskey, pint, and wine glasses, as well as in promotional material.

Lucky Shot USA and 2 Monkey advertise and promote Lucky Shot USA's entire product line, including its shot, whiskey, pint, and wine glasses, as "Made in the USA," and they do so without qualification. In its point-of-purchase displays for the shot and whiskey glasses, Lucky Shot USA includes the large text "MADE IN THE USA" and images of the American flag and the Lucky Shot USA logo. The Amazon.com listings for Lucky Shot USA's shot and whiskey glasses include "Made in the USA" text. The Amazon.com listings for the whiskey, pint, and wine glasses use a partial image of an American flag in front of the product images. The pint and wine glass listings include the language: "Top Brand items made right here in the USA." *Id.* at ¶ 29.

As of September 10, 2018, Lucky Shot USA states in its welcome letter to newsletter subscribers that "Each Lucky Shot USA product is American made to cater to the discriminating eye of historians and collectors alike." *Id.* at ¶ 31. The newsletter also contains Lucky Shot USA's logo. Lucky Shot USA's Instagram account states, "Our products are proudly made in the USA!," and the profile picture states "MADE IN THE U.S.A." *Id.* at ¶ 32.

The LuckyShotUSA.com website lists "MADE IN THE USA" on the bottom of each page, and MilitaryBalls.com displays "Proudly Made in America" in front of a picture of an embedded shot glass. *Id.* at ¶¶ 33–34. Lucky Shot USA advertises on Google.com, stating "Lucky Shot USA | Handcrafted in the USA | LuckyShotUSA.com." *Id.* at ¶ 35. 2 Monkey advertises Lucky Shot USA's products on 2monkey.com using the Lucky Shot USA logo, except that "U.S.A" is replaced with "MADE IN THE USA." *Id.* at ¶ 40. 2 Monkey also advertises Lucky Shot USA products on Alibaba.com, and its company profile on the site states, "Our products are designed and developed in the USA and contract manufactured in China." *Id.* at ¶ 46.

In March 2017, and again in May 2018, Ben Wolfgram from BenShot had telephone conversations with Douglas Ingalls, Lucky Shot USA's registered manager. In these conversations, Ingalls admitted that the glass portions of at least Lucky Shot USA's shot and whiskey glasses were made in China. The bottom of Lucky Shot USA's whiskey glass packaging states, "Glass and packaging made in China." *Id.* at ¶ 47. Benshot alleges that Lucky Shot USA fails to meet the Federal Trade Commission (FTC) standard in order for a product to be designated as "Made in USA" because it imports the glass portion of its embedded glasses. Lucky Shot USA is currently promoting the sale of its embedded glasses as "Made in the USA" on LuckyShotUSA.com, Amazon.com, and in interstate commerce, and 2 Monkey is promoting the sale of the glasses on 2monkey.com, Alibaba.com, and in interstate commerce.

BenShot alleges that Lucky Shot USA and 2 Monkey's false and misleading statements are causing and are likely to continue to cause injury due to the significance and value that buying American has on potential and actual customers of BenShot's products. Moreover, BenShot alleges that Lucky Shot USA and 2 Monkey's making of improper and unqualified representations as to the

origin of their products has "egregiously injured BenShot and has been undertaken willfully and with . . . intent and knowledge that such action would cause confusion, mistake, or deception among the public." *Id.* at ¶¶ 61–62.

BenShot alleges two causes of action: a Section 43(a) Lanham Act claim and a Wisconsin common law unfair competition claim. Because BenShot "has been and continues to be damaged by Lucky Shot USA and 2 Monkey's acts" and because such acts "have caused BenShot to suffer substantial damage," *id.* at ¶¶ 73, 77, BenShot requests relief in the form of a permanent injunction, monetary damages, and costs and reasonable attorneys' fees under 15 U.S.C. § 1117(a).

## ANALYSIS

### A. Section 43(a) of the Lanham Act

"The Lanham Act creates a cause of action for unfair competition through misleading advertising or labeling." *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 107 (2014). "[T]he cause of action is for competitors, not consumers," and such competitors "may invoke the Lanham Act because they may suffer 'an injury to a commercial interest in sales or business reputation proximately cause by [a] defendant's misrepresentations.'" *Id.* (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 140 (2014)). "This principle reflects the Lanham Act's purpose" of "protect[ing] persons engaged in [commerce within the control of Congress] against unfair competition." *Id.* at 108 (quoting *Lexmark*, 572 U.S. at 131); 15 U.S.C. § 1127. Section 43 of the Lanham Act "allows one competitor to sue another if it alleges unfair competition arising from false or misleading product descriptions." *Id.* at 106. A Section 43(a) claim arises where a person "has made a 'false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion . . . as to the origin . . . of

5

his or her goods.'" *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 31 (2003) (quoting 15 U.S.C. § 1125(a)).

The defendants first argue that BenShot has failed to plead fraud with particularity under Rule 9(b) of the Federal Rules of Civil Procedure. Specifically, the defendants contend that BenShot has contradicted its statement that they advertised Lucky Shot USA's embedded glasses as "Made in the USA" without qualification, as BenShot alleges that Lucky Shot USA's product packaging acknowledges that the glass and packaging are made in China and that Ingalls made similar admissions. Theses qualifications, the defendants argue, do not amount to more than a mere possibility of falsity. BenShot, for its part, asserts that it meets the heightened pleading standard.

BenShot pleads its claims of fraud with sufficient particularity. The Seventh Circuit has applied Rule 9(b)'s heightened pleading requirement to Section 43(a) claims under the Lanham Act. *See Gensler v. Strabala*, 764 F.3d 735, 737 (7th Cir. 2014); *see also Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 446 (7th Cir. 2011) ("[T]he dictates of Rule 9(b) apply to allegations of fraud, not claims of fraud."). Under this heightened standard, a plaintiff must allege "the who, what, when, where, and how" of the circumstances constituting the fraud. *Pirelli*, 631 F.3d at 441; *DiLeo v. Ernst & Young*, 901 F.3d 624, 627 (7th Cir. 1990). BenShot meets this standard because it alleges the parties responsible for various commercial representations (Lucky Shot USA and 2 Monkey), where these representations were made (product packaging, newsletter, Google.com, Amazon.com, Alibaba.com, proprietary websites, and Instagram), when they were made (late 2016 to present generally; exhibits show specific date captures), and how the advertisements were false or fraudulent (the defendants falsely claimed that their competing embedded glass products were "Made in the USA"; in contrast, BenShot's

6

embedded products meet that standard). *See Thermal Design, Inc. v. Guardian Bldg. Prods., Inc.*, No. 08-C-828, 2009 WL 1181327, at *3 (E.D. Wis. Apr. 29, 2009). These allegations are sufficient.

BenShot's allegation that the packaging of one of Lucky Shot USA's embedded glasses (the whiskey glass) states that the glass and packaging were made in China does not mean that all of the defendants' other commercial representations, including those used to advertise the whiskey glass, were sufficiently qualified. Moreover, the fact that BenShot alleged that the defendants falsely stated and suggested that their embedded glasses were "Made in the USA" without qualification "upon information and belief" does not doom the claim where BenShot alleges specific instances of unqualified statements and states the specific grounds upon which it believes the statements to be false, which it has done. *See Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.3d 918, 924 (7th Cir. 1992) ("[A]llegations made upon information and belief are insufficient, even if the facts are inaccessible to the plaintiff, unless the plaintiff states the grounds for his suspicions.").

The defendants next seek to dismiss BenShot's Section 43(a) claim on two other grounds. First, they argue that BenShot has failed to allege economic or reputation damages. "[A] statutory cause of action extends only to plaintiffs whose interests 'fall within the zone of interests protected by the law invoked.'" *Lexmark*, 572 U.S. at 129 (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). "[T]o come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales." *Id.* at 132. "[T]hat occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 134.

BenShot has sufficiently alleged economic or reputation damages. BenShot alleges that:

- BenShot and the defendants make, sell, and distribute similarly designed products.

- "Defendants are making false and misleading material statements of fact, that are causing and likely to continue to cause injury to BenShot due to the significance and value that 'buying American' has on potential and actual customers of the products BenShot sells."

- "Benshot has and continues to spend substantial financial resources in creating and maintaining a glass manufacturing facility as well as advertising and promoting all of its unique and distinct glass designs as made in the U.S.A., an extremely important factor to its customers and their purchasing decisions."

- The defendants' "wrongful conduct in marking and promoting improper unqualified claims and representations [that Lucky Shot USA embedded glasses are] Made in USA when they are not has egregiously injured BenShot and has been undertaken willfully and with . . . intent and knowledge that such action would cause confusion, mistake, or deception among the public."

- The defendants, "by indicating expressly and implicitly all of the Lucky Shot branded product line is of U.S. origin has caused further injury to BenShot and has been undertaken willfully and with intent and knowledge that such action would cause, [sic] mistake, or deception among the public."

- "BenShot has been and continues to be damaged by [the defendants'] acts in an amount not yet determined."

- BenShot is seeking economic damages from the defendants for the profits they realized "by reason of [their] unlawful acts in violation of false advertising and unfair competition."

ECF No. 1 at ¶¶ 9–15, 58, 60–62, 73, G. Accepting these allegations as true and construing them in the light most favorable to BenShot, the complaint sufficiently alleges that the defendants' acts deceived consumers who view a U.S. origin as a significant factor in their purchases to buy the defendants' embedded glass products instead of BenShot's embedded glass products, thus injuring BenShot. These allegations make clear that BenShot's interests fall within the zone of interests that Section 43(a) seeks to protect.

Second, the defendants argue that BenShot has failed to state a claim under the false or deceptive advertising prong of Section 43(a) because a false statement is not sufficiently alleged. To state a claim under this prong, the plaintiff must allege: "(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a loss of goodwill associated with its products." *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999). The "false statement necessary to establish a Lanham Act violation generally falls into one of two categories: (1) commercial claims that are literally false as a factual matter; or (2) claims that may be literally true or ambiguous, but which implicitly convey a false impression, are misleading in context, or likely to deceive consumers." *Id.* at 820.

The defendants contend that they have complied with the FTC's policy on "Complying with the Made in USA Standard," meaning they have not made any "false" statements that are subject to suit under Section 43(a). *See* ECF No. 1-19; "Made in USA" and Other U.S. Origin Claims, 62 Fed. Reg. 63,756 (Dec. 2, 1997); *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967, 973 (7th Cir. 1999) ("[T]he [FTC's] assessment of what constitutes deceptive advertising commands deference from the judiciary."). The defendants argue that, by BenShot's own admission, they announce on their product packaging that their products are "assembled in the USA." *See* ECF No. 1 at ¶ 47. The fact that the final assembly of their products occurs in the United States is sufficient, the defendants argue, to meet the FTC standard because, "[t]o begin with, in order for a product to

9

be considered 'all or virtually all' made in the United States, the final assembly or processing of the product must take place in the United States." 62 Fed. Reg. 63,768.

The defendants misread the FTC's standard. The FTC's Enforcement Policy Statement on U.S. Origin Claims provides that, "when a marketer makes an unqualified claim that a product is 'Made in USA,' it should, at the time the representation is made, possess and rely upon a reasonable basis that the product is in fact all or virtually all made in the United States." *Id.* The FTC explains the "all or virtually all" standard as follows:

> In other words, where a product is labeled or otherwise advertised with an unqualified "Made in USA" claim, it should contain only a de minimis, or negligible, amount of foreign content. Although there is no single "bright line" to establish when a product is or is not "all or virtually all" made in the United States, there are a number of factors that the Commission will look to in making this determination. To begin with, in order for a product to be considered "all or virtually all" made in the United States, the final assembly or processing of the product must take place in the United States. Beyond this minimum threshold, the Commission will consider other factors, including but not limited to the portion of the product's total manufacturing costs that are attributable to U.S. parts and processing; and how far removed from the finished product any foreign content is.

*Id.* As is clear from the policy statement's plain language, that a product undergo final assembly or processing in the United States is a necessary but not sufficient condition to satisfy the "all or virtually all" standard. Importantly, here, BenShot alleges that Lucky Shot USA's registered manager admitted that at least the glass portion of Lucky Shot USA's shot and whiskey glasses is made in China. Based on these admissions, BenShot alleges that the defendants falsely state and suggest without qualification that the shot and whiskey glasses, as well as the pint and wine glasses, are "Made in the USA."

Viewing BenShot's allegations in light of the FTC standard, which commands deference, *B. Sanfield, Inc.*, 168 F.3d at 973, BenShot states a plausible claim that the defendants' unqualified

statements were "false" within the meaning of Section 43(a). If BenShot's allegations are true, then the second and third factors under the FTC standard—proportion of U.S. manufacturing costs and remoteness of foreign content—seem to weigh against a finding that Lucky Shot USA's embedded glasses are "all or virtually all" made in the United States. While discovery is needed to better understand the defendants' manufacturing process and costs, the allegations in the complaint do not suggest that this is a case "[w]here the percentage of foreign content is very low," 62 Fed. Reg. 63,768, or where "[f]oreign content . . . is incorporated further back in the manufacturing process" such that the foreign content does not constitute "a direct input into the finished product." *Id.* at 63,769; *see also* ECF No. 1-19 at 10–11. BenShot has therefore sufficiently alleged a plausible theory of literal falsity under Section 43(a). *See Master Lock Co. v. Hampton Prods. Int'l Corp.*, No. 96-C-213, 1996 U.S. Dist. LEXIS 19780, at *11 (E.D. Wis. Dec. 2, 1996) ("It appears, then, that the FTC's definition of 'Made in USA' is relevant to a determination of literal falsity under section 43(a). If the FTC standard determines whether a manufacturer may label its products 'Made in USA,' then it logically follows that the truth of such a label should be judged by the same standard.").

Whether BenShot chooses to pursue a claim based on a statement's literal falsity or misleading effect is a matter of proof that need not be resolved at this pleading stage as long as BenShot sufficiently alleges facts in support of one or both theories. *See B. Sanfield*, 168 F.3d at 971–72 (explaining that literal falsity does not require proof of deception while a literally true or ambiguous statement that is misleading requires proof of actual consumer confusion). Aside from arguing that their statements are not literally false, the defendants also argue that BenShot has failed to allege that the defendants' statements are misleading in context. Specifically, the defendants

11

argue that BenShot fails to plead allegations establishing a context where the defendants' qualified statement on the product packaging for their embedded whiskey glass is misleading. The defendants also argue, without citing any authority, that all of their statements representing that their products are made in the United States must be reviewed in the full context of their offerings, including their qualified statement on the bottom of their whiskey glass packaging.

The defendants' argument is unconvincing. As stated before, the presence of one qualifying statement on the packaging of one product does not automatically cure all other unqualified statements. BenShot sufficiently alleges that the defendants' unqualified statements mislead consumers who consider U.S. origin as an important factor in their purchasing decisions and who are willing to pay more for products made in the United States to purchase the defendants' products, and that the misleading nature of the defendants' statements has injured and continues to injure BenShot. These allegations sufficiently allege that the defendants' statements are misleading in context.

Aside from their challenges to the first and fifth elements of a Section 43(a) false advertising claim, both of which this court has rejected, the defendants do not argue that BenShot has failed to allege any other element of the claim. Such arguments would be rejected in any event because BenShot's complaint sufficiently alleges the remaining elements of the false advertising claim. BenShot has therefore stated a claim under Section 43(a) of the Lanham Act.

**B. Common Law Unfair Competition**

The defendants next seek to dismiss BenShot's common law unfair competition claim on the grounds that Wisconsin Statute § 100.20 has abrogated Wisconsin unfair competition common law and that § 100.20 does not provide a private right of action. BenShot acknowledges that it "did not bring a claim under § 100.20," Br. Opp'n, ECF No. 11, at 20 n.8, but it argues that § 100.20 did

not abrogate unfair competition common law. BenShot relies on Wisconsin case law as well as the Restatement (Third) of Unfair Competition to argue that common law unfair competition claims exist. *See* Restatement (Third) of Unfair Competition § 2. BenShot seeks to bring its common law unfair competition claim under Wisconsin law based on a theory of deceptive marketing. ECF No. 11 at 21.

As far as this court is aware, no Wisconsin court has directly addressed whether § 100.20 has abrogated Wisconsin unfair competition common law. While the defendants argue that § 100.20 is in direct conflict with unfair competition common law, thereby abrogating the common law doctrine, *see MBS-Certified Pub. Accountants, LLC v. Wis. Bell, Inc.*, 2012 WI 15, ¶ 71, 338 Wis. 2d 647, 809 N.W.2d 857, several courts have recognized the existence of Wisconsin common law unfair competition claims even after § 100.20 was enacted. *See, e.g.*, *Thermal Design, Inc. v. Am. Soc'y of Heating Refrigerating & Air-Conditioning Eng'rs, Inc.*, No. , 2008 WL 1902010, at *8 (E.D. Wis. Apr. 25, 2008) (observing that Wisconsin courts define the elements of common law unfair competition claims differently depending on the type of claim); *Mercury Record Prods., Inc. v. Econ. Consultants, Inc.*, 64 Wis. 2d 163, 175–76, 218 N.W.2d 705 (1974) (noting that the unfair competition cause of action in *Int'l News Serv. v. Associated Press*, 248 U.S. 215 (1918) "comports with the theory applied by this court" and "is consistent with the public policy of the State of Wisconsin as stated in sec. 100.20(1), Stats., 1971").

The court cannot determine on the record before it that a common law claim for unfair competition does not continue to exist in Wisconsin. It does appear that Wisconsin courts in the past have recognized a claim for unfair competition. *See Mercury Record Prods.*, 64 Wis. 2d at 173–76; *Manitowoc Malting Co. v. Milwaukee Malting Co.*, 119 Wis. 543, 97 N.W. 389, 390 (1903). And as noted above, the Restatement, which the Wisconsin Supreme Court frequently

follows, recognizes a claim for deceptive marketing. As to the question of abrogation, there seems to be no direct conflict such a claim would have with § 100.20. Under these circumstances, the court declines defendants' request that BenShot's common law claim for unfair competition be dismissed at this stage. The court may reconsider this request on a more complete record, but for now the motion to dismiss this claim is denied.

## CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss (ECF No. 6) is **DENIED**. The Clerk is directed to set this matter on for a telephone scheduling conference.

Dated this  8th  day of February, 2019.

 s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court