UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

BENSHOT, LLC,

        Plaintiff,

        v.                                                  Case No. 18-C-1716

2 MONKEY TRADING LLC,
LUCKY SHOT USA LLC, and
DOUGLAS INGALLS,

        Defendants.

---

## DECISION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

Plaintiff BenShot, LLC, brought this action against Defendants 2 Monkey Trading LLC, Lucky Shot USA LLC, and Douglas Ingalls, alleging that Defendants deceptively marketed and sold a line of Lucky Shot-branded products as "Made in the USA" in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and Wisconsin common law prohibitions against unfair competition. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1367(a). The case is before the Court on Defendants' motion for summary judgment. Viewing the facts in the light most favorable to the plaintiff, as Federal Rule of Civil Procedure 56 requires, the motion for summary judgment will be denied.

## BACKGROUND

BenShot is a Wisconsin-based company that manufactures a line of drinking glasses with a bullet embedded in the side. Lucky Shot is a Florida-based company that sells a nearly identical line of glasses. 2 Monkey is the parent company of Lucky Shot and is also headquartered in

Florida. Douglas Ingalls is the owner and president of both companies and is a Florida resident. Defs.' Proposed Findings of Fact (DPFOF) ¶¶ 1–7, Dkt. No. 79.

BenShot began marketing and selling its bullet-embedded drinking glasses in 2015. Its products are entirely manufactured in the United States and have been sold across the country. Pl.'s Proposed Findings of Fact (PPFOF) ¶¶ 1–3, Dkt. No. 92. In 2016, Lucky Shot began marketing and selling a similar line of glasses, beginning with a shot glass, and expanding in 2018 to include whiskey, pint, and wine glasses. DPFOF ¶¶ 12–13. Lucky Shot sells its glasses through websites such as Amazon.com and its own website. *Id.* at ¶ 9. 2 Monkey sells Lucky Shot glasses on a website it owns, called militaryballs.com. *Id.* at ¶ 44. 2 Monkey sells products wholesale, while Lucky Shot sells directly to the consumer. *Id.* at ¶ 6. An example of the types of glasses produced by Defendants is provided below.



Lucky Shot's products have been marketed as being "Made in the USA," PPFOF ¶¶ 5, 8, but Lucky Shot products include glassware that is manufactured with indentations for the bullets in China and then packaged and shipped to the United States. DPFOF ¶¶ 16, 20, 23, 27, 29. For the most part, the bullets were glued into the glasses in the United States. *Id.* at ¶¶ 21, 24, 25, 28, 31. However, at least some of Defendants' products were made entirely in China. *Id.* at ¶¶ 18–19. The extent to which the embedded bullets were made in the United States or China, and the extent to which Lucky Shot products were made entirely in China and then successfully imported

into and sold in the United States is disputed. *See, e.g.*, Pl.'s Resp. to DPFOF ¶¶ 17–19, 21, 24, 25, 35.

BenShot alleges that Defendants have wrongfully and willfully represented and marketed their bullet-embedded glasses as "Made in the USA" in violation of the Lanham Act. Additionally, BenShot alleges that Defendants' actions constitute unfair or deceptive acts in trade or commerce in violation of Wisconsin common law. In doing so, BenShot alleges that Defendants knowingly caused confusion, mistake, or deception among the public and caused BenShot past and continuing damage.

## LEGAL STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). The party opposing summary judgment must produce specific facts showing that there is a genuine issue for trial. *Gleason v. Mesirow Fin.*, 118 F.3d 1134, 1139 (7th Cir. 1997). Only disputes over facts material to the "outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Liberty Lobby*, 477 U.S. at 248. Evidence

produced by the non-movant should be accepted as true, "and all justifiable inferences are to be drawn in his favor." *Id.* at 255. If a reasonable jury could find for the nonmoving party, then summary judgment is inappropriate. *Id.* at 248.

## ANALYSIS

The Lanham Act protects commercial competitors from unfair competition created by misleading advertising or labeling. *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 107 (2014). It creates a private remedy for those who allege injury to a commercial interest as a result of a competitor who uses false or misleading representations of the "'nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities.'" *Id.* at 108 (quoting 15 U.S.C. § 1125(a)(1)). To establish a claim under the false or deceptive advertising prong of § 43(a) of the Lanham Act, a plaintiff must prove:

> (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a loss of goodwill associated with its product.

*Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999). "In addition, to recover money damages under the Act, a plaintiff must prove both actual damages and a causal link between defendant's violation and those damages." *Id.* at 819–20.

False statements under the Lanham Act generally fall into two categories: "(1) commercial claims that are literally false as a factual matter; or (2) claims that may be literally true or ambiguous, but which implicitly convey a false impression, are misleading in context, or likely to deceive consumers." *Id.* at 820. When the statement is literally false, the plaintiff need not show that it actually deceived customers or was likely to do so. *Id.*; *see also Eli Lilly & Co. v. Arla*

4

*Foods, Inc.*, 893 F.3d 375, 382 (7th Cir. 2018) ("A literally false statement will necessarily deceive consumers, so extrinsic evidence of actual consumer confusion is not required."). In contrast, when the statement is literally true or ambiguous, the plaintiff must prove that the statement is misleading in context by demonstrating actual consumer confusion. *Id.*

Lucky Shot argues that its statement that its glassware was "Made in the USA" was not literally false but instead ambiguous. "The inquiry asks whether the defendant made an explicit representation of fact that on its face conflicts with reality." *Eli Lilly*, 893 F.3d at 382 (quoting *Schering-Plough Healthcare Prods., Inc. v. Schwarz Pharma, Inc.*, 586 F.3d 500, 513 (7th Cir. 2009)). The burden of proving literal falsity depends on the nature of the challenged statement. *BASF Corp. v. Old World Trading Co., Inc.*, 41 F.3d 1081, 1090 (7th Cir. 1994).

In *Master Lock Co. v. Hampton Prods. Int'l Corp.*, the court looked to the Federal Trade Commission's (FTC) guidelines in deciding whether the defendant's statements that its product was made in the USA was literally false under the Lanham Act. No. 96-C-213, 1996 WL 35063605, at *3 (E.D. Wis. Dec. 2, 1996). The FTC is charged with preventing deceptive and unfair market practices, and it has established standards requiring that products containing unqualified "Made in the USA" claims must be "all or virtually all" made in the United States. F.T.C. ENFORCEMENT POLICY STATEMENT ON U.S. ORIGIN CLAIMS, 62 Fed. Reg. 63765, 63768 (Dec. 2, 1997) (FTC Policy). According to the FTC,

> A product that is all or virtually all made in the United States will ordinarily be one in which all significant parts and processing that go into the product are of U.S. origin. In other words, where a product is labeled or otherwise advertised with an unqualified "Made in the USA" claim, it should contain only a de minimis, or negligible, amount of foreign content.

*Id.* Any product assembled or completed in the United States must also "have been last 'substantially transformed' in the United States." *Id.* In evaluating whether a product is all or

5

virtually all made in the United States, the FTC also considers the proportion of United States manufacturing costs in the final product as well as how remotely foreign products were incorporated into the manufacture of the product. *Id.* at 62768–69. The FTC explains that, if foreign inputs are not significant and they are far removed from the finished product, as opposed to only one or two steps removed from it, then the finished product might be considered domestic. *Id.* at 62769.

"[A]s the administrative agency charged with preventing unfair trade practices, the [FTC's] assessment of what constitutes deceptive advertising commands deference from the judiciary." *B. Sanfield, Inc. v. Finlay Fine Jewelry Corp.*, 168 F.3d 967, 973 (7th Cir. 1999). In *Master Lock*, the court stated that "[t]he literal truthfulness of the statement 'Made in the USA' must be measured according to the use of those words as a term of art." *Id.* What matters, the court held, is whether the defendants' products "actually meet the requirements which would entitle them to bear the label 'Made in the USA.' If they do not, then the statement 'Made in the USA' is literally false." *Id.* Because the defendants' products in that case did not meet the FTC requirements, the court concluded that the statement "Made in the USA," as applied to those products, was literally false.

Citing *Honeywell International Inc. v. ICM Controls Corp.*, 45 F. Supp. 3d 969 (D. Minn. 2014), Defendants argue that, while the FTC guidelines should be accorded due weight, they are not controlling over determinations of whether "Made in the USA" is an ambiguous statement. But *Honeywell* involved a combustion control device used for controlling heating appliances, a far more complex product than what is at issue here. In *Honeywell*, the court examined the FTC guidelines, highlighting the threshold requirements and other inquiries relevant to the determination of whether "Made in the USA" claims are appropriate. It found that the inquiries

6

are context specific and that, even under the FTC guidelines, it could not determine literal falsity in that case. *Id.* at 988–89 ("The Court agrees with [Defendant] that the phrase 'Made in the USA' is not unambiguous enough *in the context of this case*." (emphasis added)).

In the context of this case, however, there is ample evidence to support a finding of literal falsity. Under the FTC guidelines, there can be some ambiguity when evaluating whether a product can make an unqualified "Made in the USA" claim. *See* FTC Policy at 63768 ("Although there is no single 'bright line' to establish when a product is 'all or virtually all' made in the United States . . . ."). But there is a strong argument that Defendants' Lucky Shot glasses fall well outside the FTC guidelines for asserting such a claim.

First, Defendants' products do not have a "negligible amount" of foreign components. *Id.* The glassware for every product in Defendants' Lucky Shot product line is manufactured entirely in China. The indentation into which the bullets are glued is created during the manufacturing process in China. For products in which the bullets are glued in the United States, some of the bullets may have been made in China. For some batches, the entire product, including the bullets and the gluing, was completed in China. Defendants estimated that the cost of an indented shot glass, with packaging, coming from China was $1.15 to $1.25; the cost of a whiskey glass was approximately $2.00; and the cost of a bullet was $0.30 to $0.32. Ingalls Dep., 179:12–182:8. Thus, the finished foreign components comprise the bulk of each individual product, both in actual volume and in manufacturing costs.

Additionally, the foreign component is not remote to the final product because it is no more than one step removed from the final product in any of the glasses in question. These are foreign-made drinking glasses being shipped to the United States for the addition of what amounts to no more than a decorative feature. Despite Defendants' arguments to the contrary, gluing a bullet

7

Case 1:18-cv-01716-WCG   Filed 04/28/22   Page 7 of 11   Document 130

into a glass that was already shaped for that very purpose is not a substantial transformation of that glass. Even under the American Recovery and Reinvestment Act (ARRA), which sets out a more lenient definition of an American-made product than the FTC, the manufactured good must have "been substantially transformed in the United States into a new and different manufactured good distinct from the materials from which it was transformed." 2 C.F.R. § 176.160(a). Setting aside the questionable implication that a finished glass is equivalent to a "material," gluing a bullet into that glass does not make it a new and different good distinct from one without a bullet. The bullet is a novelty or decorative element that creates visual interest, but the essential products are still drinking glasses that would function just as well without the bullet. The addition of a bullet does not change the glass' function. If Defendants had imported the raw materials, forged the glass, molded the bullets, and then glued the components together, perhaps their products would at least meet ARRA's requirements, if not the FTC's. But to follow Defendants' reasoning that the simple act of gluing a decorative add-on onto an otherwise complete, functional product qualifies as a substantial transformation would arguably render the designation of origin almost meaningless.

Defendants rely on *Eli Lilly* for the proposition that a literal falsity is a statement that is "bald-faced, egregious, undeniable, and over the top." 893 F.3d at 384 (internal quotation marks and citation omitted). But *Eli Lilly* explains that the literal falsity inquiry "asks whether the defendant has made an explicit representation of fact that on its face conflicts with reality." *Id.* Here, there is sufficient evidence to conclude that Defendants' representation that their products were "made in the USA" conflicts with reality. It thus follows that Defendants are not entitled to summary judgment on the ground that BenShot cannot establish that they made a false statement of fact in a commercial advertisement about their own products.

Defendants next argue that BenShot cannot satisfy the second element of a Lanham Act claim, namely, that the "Made in the USA" statement actually deceived or has the tendency to deceive a substantial segment of its audience. Of course, if a jury concludes that Defendants' statement is literally false, then BenShot "need not show that the statement either actually deceived consumers or was likely to do so." *B. Sanfield*, 168 F.3d at 971. Nor is such a showing necessary where the plaintiff proves that the defendant acted willfully or with intent to deceive. *Id.* at 975 (citing *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1183 (8th Cir. 1998)). Here, as noted above, there is evidence from which a jury could conclude that the statement "Made in the USA" is literally false as to Defendants' products. There is also evidence that Defendants acted willfully and with intent to deceive. As to Defendants' state of mind, BenShot cites an email requesting Lucky Shot's Chinese manufacturer to make an advertising video but instructing the manufacturer not to show anything that would reveal the product was being made in China:

> This is very important for our media/advertising. VERY important – do not show faces of workers or any words or writing in Chinese. We want our customers to think this product could be made in USA. This would be VERY helpful to us and for the future promotion. Please let me know if you can help.

PPFOF ¶ 9 (emphasis in original). Given the evidence that not only is Defendants' statement that their product was "Made in USA" literally false, but that it was made willfully and with intent to deceive, summary judgment is not available on this ground even if BenShot had no evidence of actual deception. In such a case, consumer deception is presumed.

Lucky Shot also argues that BenShot cannot establish the third element of its Lanham Act claim, namely, that "the deception is material in that it is likely to influence the purchasing decision." *Hot Wax*, 191 F.3d at 819. But the email quoted above provides evidence in the very words of Lucky Shot's owner and president that it believed the claim that its glassware was made in the USA was material and "would be VERY helpful to us and for the future promotion." PPFOF

9

¶ 9. Lucky Shot further revealed its view of the importance of its claim that its product was made in the USA when it directed its employees to log onto Amazon through their personal accounts and mark customer reviews noting that allegedly false assertion was helpful so that they would be prioritized. *Id.* at ¶¶ 16–17. Even Lucky Shot's own expert acknowledged the importance of the "Made in USA" claim to most American consumers. *Id.* at ¶ 22.

Further evidence of the statement's materiality can be found in the survey evidence described in the Expert Report submitted by BenShot. Dkt. No. 84-5. Among the survey data discussed in the report is a 2012 poll conducted by Harris Interactive in which 70% to 75% of U.S. adults said it was important or very important to buy American for a range of products, such as appliances and furniture; a 2015 Consumer Reports survey that reported 8 in 10 people say that they would prefer to buy an American-made product; and an Alliance for American Manufacturing survey that reported 92% had a very favorable or somewhat favorable view of manufactured goods made in America. *Id.* at 17–18.

Finally, BenShot has offered evidence in the form of customer reviews of Lucky Shot's products at Amazon emphasizing the importance of the fact that the product was manufactured in the USA as an important consideration. BenShot also introduced evidence through representatives of Nine Line, a men's apparel store that carried Lucky Shot's bullet glasses, and the National Rifle Association, which had sold Lucky Shot's bullet glasses through its online store, that they strongly preferred selling products made in the USA. Both entities discontinued selling Lucky Shot products after learning that the glasses were not manufactured in the U.S. PPFOF ¶¶ 18, 21.

This evidence is more than sufficient to support a finding that the allegedly false statement by Lucky Shot concerning where its bullet glasses were manufactured was material to the

consumers' decision to buy its product. It thus follows that Lucky Shot is not entitled to summary judgment on BenShot's Lanham Act claim.

Defendants also assert that BenShot's common law unfair competition claim must be dismissed due to a lack of evidence pointing to actual consumer deception or injury. Defendants cite *Rust Environment & Infrastructure, Inc. v. Teunissen*, 131 F.3d 1210, 1219 (7th Cir. 1997), for the proposition that a Wisconsin common law unfair competition claim and a Lanham Act claim should be analyzed together under the Lanham Act framework. As discussed above, the evidence is sufficient to support a finding that Lucky Shot's statement is both literally false and material. If a jury so finds, BenShot would not need to demonstrate that the statement actually deceived customers. *Hot Wax*, 191 F.3d at 819. Adhering to the Seventh Circuit's guidance that the same standard applies to both Wisconsin common law unfair competition claims and Lanham Act claims, the Court concludes that BenShot has provided evidence sufficient for a reasonable jury to conclude that it has satisfied the elements of a Wisconsin common law unfair competition claim. Because BenShot has presented evidence from which the jury could conclude that Lucky Shot engaged in unfair competition, its motion for summary judgment (Dkt. No. 78) is **DENIED**. The Clerk is directed to set this matter for a telephone conference to address further scheduling.

**SO ORDERED** at Green Bay, Wisconsin this 28th day of April, 2022.

s/ William C. Griesbach
William C. Griesbach
United States District Judge