UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

BENSHOT, LLC,

    Plaintiff,

  v.            Case No. 18-C-1716

2 MONKEY TRADING LLC,
LUCKY SHOT USA LLC, and
DOUGLAS INGALLS,

    Defendants.

---

**DECISION AND ORDER DENYING DEFENDANTS' MOTION TO STRIKE**

---

  Plaintiff BenShot, LLC, brought this action against Defendants 2 Monkey Trading LLC, Lucky Shot USA LLC, and Douglas Ingalls (collectively, Lucky Shot), alleging that Lucky Shot deceptively marketed and sold a line of Lucky Shot-branded products as "Made in the USA" in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and Wisconsin common law prohibitions against unfair competition. BenShot alleges that Lucky Shot's misrepresentations concerning the origin of its product substantially impacted BenShot's business. BenShot is seeking, among other relief, damages in the form of lost profits it claims it sustained as a result of Lucky Shot's conduct. Now before the Court is Lucky Shot's motion to strike the reports and testimony of BenShot's damages expert, Kimberly Schenk. For the reasons that follow, Lucky Shot's motion will be denied.

## ANALYSIS

  Lucky Shot has moved to strike the reports and deposition testimony of BenShot's expert witness, Kimberly Schenk. BenShot retained Schenk to provide an opinion regarding the lost

profits BenShot sustained as a result of Lucky Shot's allegedly false advertising. In a separate decision that is being contemporaneously entered, the Court has denied Lucky Shot's motion for summary judgment and concluded that BenShot has demonstrated that the evidence is sufficient to permit a jury to find that Lucky Shot's statements that its bullet glasses were "Made in the USA" were literally false and that they were made willfully and with intent to deceive. This decision will address the admissibility of BenShot's evidence on damages.

Schenk is a Vice President of Charles River Associates (CRA), an international consulting firm dedicated to advising clients and counsel in the areas of business valuation, licensing, and litigation support services. Schenk has Bachelor of Science degrees in Finance and Economics from Pennsylvania State University. Over the course of her career, Schenk has supervised and participated in a variety of projects involving assessments of patent infringement damages, breach of contract damages, and commercial success. She has consulted with clients and counsel on business valuation issues, accounting disputes, and market assessments in a variety of industries, including consumer electronics, software, pharmaceuticals, and financial services.

Schenk opined that BenShot's damages from lost profits caused by Lucky Shot's allegedly false advertising are between $1,634,778 and $2,748,688. The two assumptions on which her opinion is based are: (1) the purchaser of each and every one of the 415,785 bullet glass sales that Lucky Shot sold during the damages period purchased the glass because it was represented as being made in the USA; and (2) if Lucky Shot had not represented its bullet glasses as being made in the USA, each and every one of the 415,785 bullet glass sales that Lucky Shot made during the damages period would have gone to BenShot. Lucky Shot argues that Schenk's opinion should be excluded because these two assumptions have no foundation in the evidence. Lucky Shot argues that "Schenk is unqualified to provide the opinions she seeks to provide in this case, and

the testimony and corresponding reports are unreliable and will not assist the trier of fact." Dkt. No. 82 at 2.

Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), govern the admissibility of expert testimony. *Krik v. Exxon Mobile Corp.*, 870 F.3d 669, 673 (7th Cir. 2017). Rule 702 sets out four requirements for expert witnesses:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

*Daubert* requires a district court to "act as an evidentiary gatekeeper, ensuring that an expert's testimony rests on a reliable foundation and is relevant to the task at hand." *Krik*, 870 F.3d at 674 (citing *Daubert*, 509 U.S. at 589). In performing its gatekeeper role, "the district court must engage in a three-step analysis before admitting expert testimony. It must determine whether the witness is qualified; whether the expert's methodology is scientifically reliable; and whether the testimony will 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Myers v. Ill. Cent. R.R. Co.*, 629 F.3d 639, 644 (7th Cir. 2010) (quoting *Ervin v. Johnson & Johnson, Inc.*, 492 F.3d 901, 904 (7th Cir. 2007)). The proponent of the expert testimony bears the burden of proving that it is admissible. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009). But before admitting expert testimony, courts must determine whether the expert's "reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. at 592–93. The inquiry is flexible and is focused not on the conclusions of the expert but "solely on

principles and methodology." *Id.* at 595. "In other words, the district court must evaluate: (1) the proffered expert's *qualifications*; (2) the *reliability* of the expert's methodology; and (3) the *relevance* of the expert's testimony." *Golpalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017) (emphasis in original).

The defect in Lucky Shot's motion is that it views the two underlying assumptions in Schenk's analysis as her expert opinions, as opposed to legal presumptions that she believes arise based on the evidence in the case. It is clear from her reports that Schenk understands them as legal presumptions. Quoting from a decision of the United States Court of Appeals for the Seventh Circuit, Schenk states: "For purposes of my report, it is my assumption that where there is literal falsity, the plaintiff may 'dispense with evidence that anyone was misled or likely to be misled [because] the seller who places an indisputably false statement in his advertising or labeling probably did so for a malign purpose, namely to sell his product by lies, and if the statement is false probably at least some people were misled, and since it was a lie why waste time on costly consumer surveys[.]'" Dkt. No. 84-5 at 18 (quoting *Schering-Plough Healthcare Prods. v. Schwarz Pharma, Inc.*, 586 F.3d 500, 512 (7th Cir. 2009)). In other words, Schenk's opinion as to BenShot's damages is based on the legal presumption she believes arises as a matter of law in the event the jury finds that Lucky Shot's statement that its bullet glasses were made in the USA is literally false.

The general rule is that, to establish damages for false advertising under § 43(a) of the Lanham Act, a plaintiff must prove actual consumer confusion or deception resulting from the defendant's action. "In most cases, this can be proven by testimony of buyers or by customer surveys. But if the challenged statements were intentionally and literally false and deception of customers is clear from the facts, loss of sales can be proven without any other evidence."

4

5 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 27.42. As the Second Circuit has explained, "[o]ur case law 'is well settled that in order for a Lanham Act plaintiff to receive an award of damages the plaintiff must prove either actual consumer confusion or deception resulting from the violation . . . or that the defendant's actions were intentionally deceptive thus giving rise to a rebuttable presumption of consumer confusion.'" *Boosey & Hawkes Music Publishers, Ltd. v. Walt Disney Co.*, 145 F.3d 481, 493 (2d Cir. 1998) (quoting *George Basch Co. v. Blue Coral Inc.*, 968 F.2d 1532, 1537 (2d Cir. 1992) (initial quotation marks omitted)); *see also Res. Developers Inc. v. Statue of Liberty–Ellis Island Found., Inc.*, 926 F.2d 134, 140 (2d Cir. 1991).

Courts have not applied such a presumption in a competitive business environment where the defendant is guilty of misrepresenting its own product without targeting any other specific product. "Otherwise, a plaintiff might enjoy a windfall from a speculative award of damages by simply being a competitor in the same market." *Porous Media Corp. v. Pall Corp.*, 110 F.3d 1329, 1334 (8th Cir. 1997). But this exception does not apply where deliberate deception is shown to have taken place in a two-player market. *Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 260 (2d Cir. 2014). Here, Schenk has concluded that there are essentially only two players in the bullet glass market. Although Lucky Shot disputes Schenk's conclusion, that is not a reason to exclude her opinion.

Because there is evidence from which a jury could find that Lucky Shot's statement concerning the origin of its product was literally false and made with intent to deceive, Schenk's opinion and proposed testimony would seem, at least at this point, admissible. Neither party has clearly addressed the presumption underlying her analysis in their briefing on the issue and its application in this circuit under the circumstances of this case. But that is a question of law, not an evidentiary one. Since Lucky Shot does not challenge Schenk's qualifications to perform the

5

damage analysis based on the legal presumption she cites, its motion to strike Schenk's reports and testimony will be denied. Of course, Lucky Shot may renew its motion in the event the evidence at trial fails to support the application of the presumption underlying her analysis. On the record now before the Court, however, Lucky Shot's motion (Dkt. No. 81) is **DENIED**.

    **SO ORDERED** at Green Bay, Wisconsin this 28th day of April, 2022.

s/ William C. Griesbach<br>
William C. Griesbach<br>
United States District Judge