UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BENSHOT, LLC,

        Plaintiff,

v.                                                                          Case No. 18-C-1716

2 MONKEY TRADING LLC,
LUCKY SHOT USA LLC, and
DOUGLAS INGALLS,

        Defendants.

## DECISION AND ORDER GRANTING PLAINTIFF'S
## MOTION FOR CURATIVE RELIEF

Plaintiff BenShot, LLC, brought this action against Defendants 2 Monkey Trading LLC, Lucky Shot USA LLC, and Douglas Ingalls, alleging that Defendants deceptively marketed and sold a line of Lucky Shot-branded products as "Made in the USA" in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and Wisconsin common law prohibitions against unfair competition. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1367(a). Before the Court is BenShot's motion for curative relief under Federal Rule of Civil Procedure 37(e). For the following reasons, the motion will be granted.

### BACKGROUND

Specific details about the underlying dispute can be found in the Court's decision and order on Defendants' motion for summary judgment, which was decided contemporaneously with this motion. Here, the Court will focus only on the facts and allegations relevant to this motion. In short, the issue is to what extent Defendants' "bullet glasses" were produced in China. BenShot has continuously sought information regarding the sourcing of Defendants' products from China.

On March 9, 2020, BenShot requested the deposition of Rick Risucci, an employee of Defendants who worked in "warehouse operations" and handled "some production." Dkt. Nos. 111-1 & 84-1 at 22. The next day, Defendants' counsel informed BenShot that Risucci had been terminated. Dkt. No. 111-2. BenShot continued its efforts to serve a subpoena upon Risucci, attempting service eight times from March 12, 2020, to May 23, 2020, all to no avail. Dkt. Nos. 111-3 & 111-5.

During the June 26, 2020, deposition of Douglas Ingalls, BenShot's counsel asked who decided where components for Defendants' products were sourced or made, and Mr. Ingalls replied that "[i]t would have been a combination of myself and Rick Risucci." Dkt. No. 84-1 at 23. Mr. Ingalls further stated that it was not true that he had final say over where the components for the product were sourced or made because "Rick had some autonomous abilities to set up new relationships and purchase parts without my knowledge." *Id.* Importantly, Mr. Ingalls testified that Mr. Risucci had been rehired and that he was "handl[ing] some production." *Id.* at 22. On August 7, 2020, BenShot again requested Risucci's deposition and sent multiple follow-up emails to inquire as to Risucci's availability. Dkt. No. 111-5. Defendants' counsel replied on September 16, 2020, and informed BenShot that Risucci had again been terminated, this time on July 7, 2020.

BenShot also served Defendants with a request for production of Risucci's emails on August 7, 2020. Dkt. No. 111 at ¶ 9. When discovery closed on November 17, 2020, however, BenShot still had not received those emails. Dkt. No. 111-7. On November 25, 2020, Defendants' counsel informed BenShot that Risucci's emails had been destroyed, and on December 9, 2020, counsel emailed BenShot with an explanation for their destruction. Dkt. No. 111-8. According to the email, Brooke Ingalls, Defendants' Retail Operations Manager, had "revoked the email license for Rick Risucci's email" after he had been terminated on February 4, 2020, purportedly to "save the company costs due to covid shutdown and to prevent Rick Risucci from accessing his account

2

after termination." *Id.* In addition, Ms. Ingalls was supposedly unaware that, by revoking Risucci's license, all email history and information related to Risucci's account would be deleted. *Id.* When Risucci was rehired on May 6, 2020, he did not use a company email but instead used a personal email address to conduct business. *Id.* BenShot hired Digital Intelligence, Inc., to attempt to recover Risucci's deleted emails, but the effort yielded no results. Dkt. No. 111-11. BenShot seeks curative relief, based on Defendants' failure to preserve the emails, pursuant to Federal Rule of Civil Procedure 37(e).

## ANALYSIS

Federal Rule of Civil Procedure 37(e) addresses litigants' failure to preserve electronically stored information. The rule provides:

> If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> > (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> >
> > (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
> >
> > > (A) presume that the lost information was unfavorable to the party;
> > >
> > > (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> > >
> > > (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e). BenShot asserts that curative relief is appropriate for several reasons. Tracking the language of the rule, it argues that Risucci's emails should have been preserved, that Defendants failed to take reasonable steps to preserve them, that the emails cannot be restored or replaced through additional discovery, that it has been prejudiced by the loss of the information, and that Defendants intended to deprive it of the emails' use in litigation. Dkt. No. 110 at 7–8.

3

As an initial matter, Defendants argue that a showing of bad faith is required before the Court may order sanctions for spoilation under Rule 37(e). *See Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008). The advisory committee note explains, however, that the rule "authorizes and specifies measures a court may employ if information that should have been preserved is lost, *and specifies the findings necessary to justify these measures*." Fed. R. Civ. P. 37 Advisory Committee Notes to 2015 Amendment, Subdivision (e) (emphasis added). In other words, Rule 37(e), as written, identifies the specific findings the Court must make before imposing sanctions and curative relief, and a finding of bad faith is not required.

The first step in a Rule 37(e) analysis is to determine whether the emails should have been preserved in light of the litigation. Defendants do not appear to dispute that Risucci's emails should have been preserved. Indeed, as an employee tasked with the sourcing and production of products, Risucci's emails were highly relevant to the issue of whether Defendants produced all, or a substantial portion of, their product outside of the United States. It should have been all the more obvious that preservation was required because, as of February 4, 2020, the day Ms. Ingalls revoked Risucci's email license, this litigation had been ongoing for well over a year.

Next, the Court must consider whether Defendants failed to take reasonable steps to preserve Risucci's emails. Defendants' assertion that Ms. Ingalls meant only to revoke Risucci's access to the email and save the company costs, not to delete them, Dkt. No. 114 at ¶¶ 4–9, does not change the fact that Defendants failed to take any reasonable steps to preserve the emails. Matthew Stippich is the general counsel and president of professional services at Digital Intelligence, Inc., the company BenShot hired to recover the emails, and asserts that Defendants had several options to ensure the emails were preserved. Dkt. No. 112 at ¶¶ 18–39. He notes that an administrator could have made a copy of Risucci's information as it existed on the date of preservation or could have used the specific "eDiscovery 'hold' within Office 365." *Id.* at ¶ 19.

4

Easier yet, Stippich explains that, if the intent behind revoking Risucci's license was to prevent him from accessing the email, Defendants could have simply disabled his ability to log into the account by using the "Block Sign-In" feature. *Id.* at ¶ 35. In short, Defendants had a number of options to preserve Risucci's emails, including a specific eDiscovery feature, that they did not utilize. Therefore, the Court concludes that Defendants failed to take reasonable steps to preserve Risucci's emails.

The Court must also consider whether the emails can be replaced through additional discovery. BenShot maintains that they cannot. BenShot hired Digital Intelligence, Inc., to attempt to recover the deleted emails. Digital Intelligence gained access to Defendants' Office 365 environment and performed various searches to identify potential data sources for the recovery of Risucci's emails. Dkt. No. 111-9. Despite searching Defendants' Office 365 account and examining computer hard drives, Digital Intelligence was unable to recover the emails. Dkt. No. 111-11. Defendants argue that BenShot has not "exhausted all avenues of attempting to retrieve the lost data" because it opted not to search 27 gigabytes of data in Office 365 potentially related to Risucci's email. Dkt. No. 113 at 8–9. But BenShot has explained, through Matthew Stippich, that it is "highly unlikely that the 27GB of unindexed items would contain any Risucci email" because email messages are "fully indexed and fully searchable within the eDiscovery and Content Search functions" of Office 365. Dkt. No. 121 at ¶ 10. The Court finds that BenShot has made a sufficient showing on this issue and will not require it to conduct an extensive search that is likely to yield no results.

Because BenShot has satisfied Rule 37(e)'s threshold requirements, the Court must determine whether BenShot has been prejudiced from the loss of Risucci's emails. If so, the Court may "order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1). Defendants argue that no prejudice exists because it has already provided over one million pages

5

of discovery, including 10,755 documents regarding Risucci's emails, at least where the emails were directly interacting with a member on Defendants' network. *See* Dkt. No. 116-2. Defendants suggest that, because BenShot has some emails and related documents, such as invoices and purchase orders, Risucci's emails would not advance BenShot's position in this case in any way, and therefore, it is not prejudiced. But as BenShot points out, it is unclear whether the emails produced by Defendants captured emails that Risucci may have directly sent to or received from international suppliers. A review of the emails produced reveals that the vast majority of them involve Risucci and another employee of Defendants, rather than Risucci and an international supplier. *See* Dkt. No. 116-2.

The fact that Risucci sent, received, or was copied on emails to and from other employees does not mean that all or even most of Risucci's emails relevant to BenShot's case were preserved. It is much more likely that there were many emails exchanged between Risucci and outside entities, such as suppliers and manufacturers, that did not involve other employees and were consequently lost forever upon deletion of his account. Mr. Ingalls himself acknowledged that Risucci had autonomous abilities to set up new relationships and purchase parts without his knowledge. Given Risucci's autonomous ability to set up purchasing agreements, the missing emails may have been more helpful to BenShot than those preserved incident to other employees' emails. Therefore, the Court concludes that BenShot has been prejudiced as a result of the loss of the emails.

Although the Court finds that BenShot has been prejudiced, the question remains whether Defendants "acted with the intent to deprive" BenShot of the emails' use in this litigation. Fed. R. Civ. P. 37(e)(2). BenShot "need only demonstrate intent by a preponderance of the evidence." *Torgersen v. Siemens Bldg. Tech., Inc.*, No. 19-cv-4975, 2021 WL 2072151, at *4 (N.D. Ill. May 24, 2021) (citation omitted). "Intentional destruction and bad faith may be proved inferentially

and with circumstantial evidence, and this Court need not leave experience and commonsense at the courthouse door when making its determination." *Id.* (internal quotations and citation omitted).

BenShot argues that Defendants intentionally deleted the emails because Defendants "*affirmatively* ignored a litigation hold, *affirmatively* ignored a software warning, and *affirmatively* deleted Mr. Risucci's email account." Dkt. No. 110 at 9 (emphasis in original). It asserts that Defendants' initial excuses, that the account was revoked due to COVID shutdowns and cost-cutting measures, make no sense. BenShot notes that, although the account was deleted on February 4, 2020, the first two presumptive positive cases of COVID-19 were not detected in Florida until March 1, 2020. *Id.* Additionally, BenShot's expert explains that maintaining Risucci's email account would only have cost Defendants $50 per year. Dkt. No. 112 at ¶ 37.

Defendants maintain that there was no intent or bad faith involved. In her declaration, Ms. Ingalls asserts that she revoked Risucci's email license to "save the company costs and to prevent Rick from accessing the account since he was no longer an employee." Dkt. No. 114 at ¶ 4. She further asserts that she was "unaware that revoking the Office 365 license for Rick Risucci's email would delete the history" of his emails and that there were "no warnings presented by Office 365 warning [her] that Rick Risucci's email history would be deleted when [she] revoked the license." *Id.* at ¶¶ 6–7. She concludes by asserting that she did not revoke the license to hide evidence or information and that no one instructed her to destroy any evidence relevant to the case by revoking Risucci's Office 365 license. *Id.* at ¶¶ 8–9.

The Court does not find Defendants' proffered excuses credible. With respect to the initial excuse given by Defendants' counsel, that the deletion was related to COVID-19 shutdowns, the Court is well aware that COVID-related shutdowns did not begin to occur until mid- to late-March. The Florida Department of Health recorded the first case in the state on March 1, the Governor ordered bars closed March 17, restaurants were closed for dine-in March 20, and the first county-

7

Case 1:18-cv-01716-WCG   Filed 04/28/22   Page 7 of 9   Document 132

level stay-at-home orders took effect on March 24, 2020. A state-wide stay at home order was not issued in Florida until April 1, and did not take effect until April 3, 2020. *See* Fla. Exec. Order No. 20-91 (Apr. 1, 2020). Thus, Defendants' claim that they were already experiencing COVID shutdown-related financial stress on February 4, 2020, is not just implausible, it is impossible. Defendants' assertion that they merely wished to save costs is not a satisfactory excuse either— BenShot's expert explained that maintaining Risucci's email account would have only cost Defendants $50 per year, meaning any cost savings from its deletion were *de minimis*. Dkt. No. 112 at ¶ 37. Although Ms. Ingalls asserts that no warnings or options for preservation were given to her prior to deleting Risucci's email account, BenShot's expert provided screenshots demonstrating that Ms. Ingalls would have been confronted with *both*. *Id.* at ¶ 41. Furthermore, Ms. Ingalls noted that, during the pendency of this action, she has been the one to "locate and identify electronic files, including emails, to be preserved and searched for production to Plaintiff." Dkt. No. 114 at ¶ 2. This statement only creates a further inference that Ms. Ingalls would have known *exactly* what she was doing when she revoked the license for Risucci's account. Defendants' incredible excuses and feigned ignorance as to Office 365's functions will not carry the day, and the Court concludes that BenShot has put forth adequate evidence that, by a preponderance of the evidence, demonstrates that Defendants intended to deprive BenShot of Risucci's emails for use in this litigation. Therefore, relief is appropriate under both Rule 37(e)(1) and Rule 37(e)(2).

As for relief under Rule 37(e)(1) the Court will require Defendants to pay BenShot's attorneys' fees, forensic fees, costs, and disbursements it incurred in addressing the destroyed emails, including those incurred in relation to this motion. Courts have found such an award appropriate under Rule 37(e). *See, e.g.*, *Spencer v. Lunada Bay Boys*, 806 F. App'x 564, 568 (9th Cir. 2020) (holding that the district court did not abuse its discretion by ordering monetary

8

sanctions under Rule 37(e)); *CAT3, LLC v. Black Lineage, Inc.*, 164 F. Supp. 3d 488, 502 (S.D.N.Y. 2016) (imposing "the costs, including reasonable attorneys' fees, incurred by the defendants in establishing the plaintiffs' misconduct and in securing relief" as sanctions under Rule 37(e)). The Court will also prohibit argument or testimony that Defendants' products were not made in China unless supported by documents confirming the origin of the product. Finally, the Court will presume and instruct the jury to presume that the deleted emails were unfavorable to Defendants.

## CONCLUSION

For these reasons, Plaintiff's motion for curative relief under Federal Rule of Civil Procedure 37(e) (Dkt. No. 109) is **GRANTED**. Defendants are prohibited from arguing or offering testimony that Defendants' products were not made in China unless supported by documents confirming the origin of the product. The destroyed emails will be presumed to be unfavorable to Defendants and, if applicable, any jury instructions will so reflect. Defendants must pay BenShot's attorneys' fees, forensic fees, costs, and disbursements it incurred in addressing the destroyed emails, including those incurred in relation to this motion.

**SO ORDERED** at Green Bay, Wisconsin this 28th day of April, 2022.

> s/ William C. Griesbach
> William C. Griesbach
> United States District Judge